Vanessa N. Raven, Esq. (SBN: 294276)
Benjamin T. Ikuta, Esq. (SBN: 260878)
IKUTA HEMESATH LLP
1327 North Broadway
Santa Ana, CA 92706
Tel: (949) 229-5654
Fax: (949) 203-2162
ben@ih-llp.com
vanessa@ih-llp.com

Attorneys for Plaintiffs JANE DOE 1, JANE DOE 2, and JANE DOE 3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, AND JANE DOE 3,<br><br>Plaintiffs,<br><br>vs.<br><br>COMMUNITY MEDICAL CENTERS, INC., dba DIXON FAMILY PRACTICE; and DOES 1 through 50, Inclusive,<br><br>Defendants. | CASE NO:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1) **SEXUAL BATTERY (CIVIL CODE § 1708.5);**<br>2) **NEGLIGENT HIRING, SUPERVISION, AND RETENTION**<br>3) **MEDICAL MALPRACTICE**<br>4) **NEGLIGENCE**<br>5) **PREMISES LIABILITY**<br>6) **SEXUAL HARASSMENT (CIV. CODE § 51.9)**<br>7) **GENDER VIOLENCE (CIV. CODE § 52.4)** |

Plaintiffs JANE DOE 1, JANE DOE2 and JANE DOE 3, demanding a jury trial, bring this action against Defendant COMMUNITY MEDICAL CENTERS, INC. dba DIXON FAMILY PRACTICE (hereafter, "Defendant COMMUNITY MEDICAL" or "Defendant") and, DOES 1 through 50, Inclusive, for general, compensatory, liquidated damages, and statutory damages, and costs and attorney's fees resulting from Defendant's unlawful conduct, and as grounds therefore allege as follows:

**INTRODUCTION**

1. This case involves a medical clinic, Dixon Family Practice, owned by COMMUNITY MEDICAL CENTERS, INC., whose management chose to allow one of its employee doctors to inappropriately fondle the breasts of and molest young female patients in a terrible pattern of patient

abuse. Clinic management knew that this predator, Andy Yongde Zhu, M.D. ("ZHU"), had a history of molesting patients, yet gave him continued and unfettered access to female patients without any supervision or chaperone. COMMUNITY MEDICAL CENTERS, INC. knowingly allowed Dr. Zhu to continue to molest young female patients between 2014 and 2020, until finally a 16-year-old victim sought help from law enforcement.

2. The events giving rise to this action occurred in the County of Solano, State of California.

3. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendant ANDY YONGDE ZHU, M.D., and DOES 1 through 15, Inclusive, were and now are physicians, medical corporations, health maintenance organizations, surgeons, surgical nurses and technicians, office personnel, physical therapists, and paramedical professionals licensed by the State of California to practice their specialty in said state, with offices located within the County of SOLANO, State of California, and that each of them has held him or herself out to the public, including Plaintiffs, to possess that degree of skill, ability, and learning common to practitioners in said community.

4. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants COMMUNITY MEDICAL CENTERS, INC., dba DIXON FAMILY PRACTICE ("CMC Dixon Family Practice" or "CMC") and DOES 16 through 35, Inclusive, were and now are medical clinics, medical hospitals, health care systems, emergency medical facilities, and industrial medical facilities licensed to provide hospital and medical services in the County of Solano, State of California to which members of the public were and are invited, including PLAINTIFFS.

5. Plaintiffs do not know the true names and capacities of those Defendants designated as DOES 1 through 50, Inclusive, but allege that each of said fictitiously named Defendants was negligently and unlawfully responsible for the events hereinafter described and for the injuries and damages sustained by Plaintiffs. Plaintiffs will ask leave of court to amend this allegation when the identity of each said fictitiously named Defendants has been ascertained.

6. Plaintiffs are informed and believe and thereon allege that each of the Defendants sued herein as a DOE is responsible in some manner for the events and happenings herein referred to, thereby contributing as a substantial factor in bringing about the injuries and damages to Plaintiff as herein alleged.

7.  The years of sexual abuse by Dr. Zhu were allowed to happen for years while CMC turned a blind eye and allowed it to happen. On or around August 2, 2023, the Medical Board of California filed an accusation against Dr. Zhu for sexual exploitation and sexual misconduct, which is available here:

https://www2.mbc.ca.gov/BreezePDL/document.aspx?path=%5cDIDOCS%5c20230803%5cDMRAAAJD1%5c&did=AAAJD230803180756242.DID

8.  On or about November of 2014, Jane Doe 1 had an appointment with Defendant ZHU to request a medication refill. At the November 2014 appointment, Jane Doe 1 was 26-years old, and voiced no current physical complaints to Defendant ZHU. Jane Doe 1 reported that she was experiencing anxiety and sought medication to treat the anxiety and insomnia. Nonetheless, Defendant ZHU performed a physical examination of Jane Doe 1, including listening to her heart.

9.  While Jane Doe 1 was sitting up on the exam table, Defendant ZHU put his hand inside her tank top shirt and inside her bra and cupped and squeezed her breast for several seconds. Defendant ZHU was not wearing gloves and the skin of his hands touched the skin of her breasts under her wired bra. Defendant ZHU cupped her breast sufficiently firmly to nearly lift it out of the wired bra. There was no one in the examination room other than Defendant ZHU and Jane Doe 1, and at no point did Defendant ZHU offer Jane Doe 1 a chaperone or advise her to change into a gown.

10. Defendant ZHU then asked Jane Doe 1 to lay down and lifted up her tank top and palpated her abdomen, before putting his hand on her breast again, under the tank top and bra, and squeezing it for several more seconds. As Defendant ZHU palpated Jane Doe 1's abdomen and touched her breasts, he simultaneously asked Jane Doe 1 questions about her medical history and condition. Jane Doe 1 wondered if he was doing this to distract her from his conduct and make the touching of her breast seem like a normal part of a medical examination. Jane Doe 1 was shocked and left the exam room as soon as possible. Defendant ZHU's medical record for this appointment contains no description of any breast examination or any medical justification for touching Jane Doe 1's breasts.

11. As soon as the appointment was over, Jane Doe 1 called her mother and told her that Defendant ZHU had touched her breasts inappropriately during the appointment. Jane Doe 1's mother encouraged her to inform the medical office staff, but Jane Doe 1 was too shocked and anxious to report

the incident right away. Approximately one month later, Jane Doe 1 made another appointment at CMC Dixon Family Practice. She requested that she see a female provider.

12. On or about December of 2014, Jane Doe 1 returned to CMC Dixon Family Practice, and had an appointment with a female Physician Assistant, (PA). Jane Doe 1 told the PA that Defendant ZHU touched her breasts inappropriately at her last appointment. The PA, who was an agent of CMC Dixon Family Practice, completely dismissed and disregarded Jane Doe 1's comments. She refused to discuss Jane Doe 1's concerns and stated that the PA was not present during her last appointment with Defendant ZHU and could not know what happened. The PA changed the subject to address only Jane Doe 1's current medical complaints. Jane Doe felt completely embarrassed by the PA's actions, further increasing her anxiety.

13. CMC refused to take Jane Doe 1's complaints seriously. This was not the only time CMC was provided notice of Defendant ZHU's sexual deviancy and decided to do absolutely nothing about it. Plaintiffs are informed and believe, and thereupon allege, that on or about June 29, 2015, another patient (not a plaintiff in this action) saw Defendant ZHU to complete a physical examination in connection with her U.S. Citizen and Immigration Services Application. During the examination, without any legitimate medical reason, Defendant ZHU placed his hand inside her top and squeezed one of her breasts. He then put his hand inside the other side of her top and cupped and squeezed the other breast. At no point did Defendant ZHU provide this patient with a gown or explain what he was doing or what the examination would require. Defendant ZHU and this patient were the only two people in the exam room, and Defendant ZHU never offered This patient a chaperone. This patient was startled by Defendant ZHU touching her breasts in this way because it was nothing like any of the regular breast examinations she had experienced by other physicians. Defendant ZHU's medical record for this appointment contains no description of any breast examination or any medical justification for touching this patient's breasts.

14. This patient went home and told her husband about the appointment and that she was concerned that Defendant ZHU had behaved inappropriately by touching her breasts in that way. Her husband recommended that she phone the CMC Dixon Family Practice's office to report what happened. This patient and her husband called the office, explaining that she had just had an immigration physical with Defendant ZHU and asked if it was normal for this physical to include a breast examination. The

CMC employee who answered the phone put them on hold and came back a few minutes later, telling her that the examination was completely normal. This patient told the person on the phone that the examination did not feel normal. The person on the phone was unhelpful and reiterated that a breast examination is "normal" for an immigration physical. This patient felt dissuaded from pursuing the matter further because the medical office told her that Defendant ZHU's conduct was normal, and she did not want to jeopardize her immigration paperwork. She and her husband did, however, advise CMC Dixon Family Practice that if she had to return for future care at that office that she requested not to be given another appointment with Defendant ZHU.

15. CMC informed Defendant ZHU that there had been a complaint against him by this patient that he had touched her breasts inappropriately. This shows that CMC lied to this patient and was actively concealing Defendant ZHU's misconduct. After lying and misrepresenting to the patient that the conduct was "completely normal," CMC did not take any employment action against Defendant ZHU. Instead, CMC advised him that he should have a chaperone in the exam room when he conducts physical examinations of female patients in the future, to prevent this type of complaint from occurring again.

16. At no point in time did CMC ever contact Jane Doe 1, Jane Doe 2, or Jane Doe 3 of Defendant ZHU's molestation of other patients. What's worse, CMC did not do anything to ensure that Defendant ZHU had a chaperone.

17. Jane Doe 2 was seen by Defendant ZHU approximately 4-5 times at CMC Dixon Family Practice. At a visit in approximately 2014 or 2015, when she was around 18 years old, Jane Doe 2 saw Defendant ZHU for a medication refill. Jane Doe 2 did not present for a physical exam, and Defendant ZHU did not complete a physical exam.

18. However, at one point during the visit, Defendant ZHU put his hands down Jane Doe 2's shirt and into her bra, cupped one of her breasts and squeezed it, and then moved to the other side and cupped and squeezed her other breast. Defendant ZHU did not listen to her heart, check her chest or ribs, or give any explanation for why he was touching and squeezing her breasts. He did not perform any other kind of physical examination. She was not in an exam gown and there was no one else in the room at the time.

/ / /

19. Jane Doe 2 was shocked and embarrassed by this bizarre behavior. That same evening, she reported it to her partner (boyfriend at the time, currently her husband), who told her, "I think you were molested." She did not report this behavior to anyone else due to her own feelings of shock and embarrassment.

20. Jane Doe 3 was seen by Defendant ZHU one time at CMC Dixon Family Practice. At a visit in approximately 2014 or 2015, when she was around 20 years old, Jane Doe 3 saw Defendant ZHU for a work physical for her employment as a caregiver.

21. The physical examination initially seemed to be conducted in the normal fashion, although Jane Doe 3 noted that there was no chaperone for the examination and Defendant ZHU was not wearing gloves. Defendant ZHU looked into her ears, checked her reflexes with a tool on her knee, and listened to her lungs.

22. Defendant ZHU then asked Jane Doe 3 to lie down on the examination table. She was not wearing an exam gown and remained in her street clothes. Defendant ZHU palpated her abdomen and then his hands went up her shirt. Defendant ZHU then felt her bra, lifted her bra and put his hands on her breasts. He then squeezed both of her breasts and felt her nipples. He removed his hands and left the room.

23. Jane Doe 3 was disgusted by this strange and inappropriate behavior and immediately told her mother. Her mother informed her that was not how a breast exam is typically conducted and that someone should have been in the room.

24. Plaintiffs are informed and believe and thereupon allege that on or around May 22, 2020, a 16-year old patient (not a plaintiff in this action) was allowed to be alone with Defendant ZHU with absolutely no chaperone or supervision. In fact, CMC essentially assisted Defendant ZHU to act with sexual deviancy by disallowing the patient's mother in the office, blaming COVID-19. Left alone with this 16-year old patient, Defendant ZHU sadly, but not surprisingly, molested her by lifting her sports bra and squeezing her breast. The 16-year old, crying, reporting the incident to a Medical Assistant in the hallway. Finally, staff at the facility reported the matter to the police department.

/ / /

/ / /

25. Only after the police were involved did CMC finally, but reluctantly, take action against Dr. Zhu. Plaintiffs are informed and believe, and thereupon allege, that CMC terminated Defendant ZHU, but only after many years of knowingly allowing Defendant ZHU to molest patients.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

26. This Court has jurisdiction pursuant to 42 U.S.C. § 233. Based on information and belief, CCMC is a deemed employee of the Public Health Service while performing medical services. See 42 U.S.C. § 233(g)(1)(A). The exclusive remedy for tort claims asserted against deemed employees of the Public Health Service is a tort action against the United States pursuant to the Federal Tort Claims Act. See id.; see also id. § 233(a).

27. Plaintiffs served a Federal Tort Claim Form on June 28, 2024. On July 11, 2024, a response was received requesting additional information. The requested information was provided on July 26, 2024, after which, no additional response to Plaintiffs' tort claim has been received. As such, all administrative remedies have been exhausted and Plaintiffs should be granted leave to proceed with this Complaint.

28. Venue is proper in The Eastern District of California because the unlawful practices were committed in the City of Dixon, County of Solano, California.

## FIRST CAUSE OF ACTION

## SEXUAL BATTERY UNDER CIVIL CODE SECTION 1708.5 AGAINST DEFENDANTS ANDY YONGDE ZHU, M.D., AND DOES 1 THROUGH 10

29. For this cause of action, Plaintiffs incorporate by reference all prior paragraphs.

30. Defendant ZHU intended to cause harmful and offensive sexual contact with Plaintiffs JANE DOE 1, JANE DOE 2 and JANE DOE 3. JANE DOE 1, JANE DOE 2 and JANE DOE 3 did not consent to the sexual molestation and battery, which included ZHU's unconsented to touching of JANE DOE 1, 2 and 3's intimate parts. JANE DOES 1, 2 and 3 were harmed and offended by the conduct.

31. Defendant ZHU acted intentionally and with malice and oppression.

/ / /

/ / /

/ / /

## SECOND CAUSE OF ACTION

## NEGLIGENT HIRING, SUPERVISION, AND RETENTION COMMUNITY MEDICAL CENTERS, INC., DBA DIXON FAMILY PRACTICE, AND DOES 11 THROUGH 50

32. For this cause of action, Plaintiffs incorporate by reference all prior paragraphs.

33. Defendants COMMUNITY MEDICAL CENTERS, INC., dba DIXON FAMILY PRACTICE, and DOES 11 through 20 and their employees and agents had the responsibility and duty to adequately and properly investigate, hire, train, and supervise its employees and to protect the general public.

34. Defendants CMC Dixon Family Practice and DOES 11 through 20 knew or should have known that Defendant ZHU was unfit to practice as a physician and was unfit to treat young female patients without a chaperone. These Defendants failed to exercise reasonable care in hiring and supervising Defendant ZHU.

35. Plaintiffs believe and are informed CMC Dixon Family Practice was put on notice as early as 2014 that Defendant ZHU behaved inappropriately during medical examinations of young female patients. Yet, CMC Dixon Family Practice failed to monitor, supervise, shadow, or chaperone defendant ZHU and permitted him to continue to see female patients unsupervised. This lack of proper supervision was a substantial factor in causing Plaintiffs' injuries.

## THIRD CAUSE OF ACTION

## MEDICAL MALPRACTICE AGAINST ALL DEFENDANTS

36. For this cause of action, Plaintiffs incorporate by reference only paragraphs 2, 3, 4, 5, and 6.

37. Plaintiffs JANE DOE 1, JANE DOE 2 and JANE DOE 3 engaged for compensation the services of Defendant ZHU, Defendant CMC Dixon Family Practice, and DOES 1 through 50, and each of them, to examine, diagnose, prescribe medicines for, perform surgery on, treat, handle, control, and seek competent consultant advice for the care, treatment, and diagnosis of a medical problem involving Plaintiffs' well-being, as well as to perform necessary tests, therapies, and surgeries for the treatment of said problem if same were required.

///

38. Defendants undertook to handle and control the care and treatment of Plaintiffs and to seek whatever consultant advice was reasonably necessary for the treatment of Plaintiffs.

39. In the aforementioned examinations, diagnoses, prescriptions of medicines and drugs, surgery and the handling and control of the care and treatment of Plaintiffs, Defendants negligently and tortiously failed to possess or exercise that degree of knowledge or skill that would ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, and the like, engaged in said professions in the same locality as Defendants, in that said Defendants negligently and unlawfully failed to properly and correctly diagnose, render care and treatment to, perform proper surgery on, and prescribe and administer medicine and drugs for the condition of Plaintiff.

40. Specifically, Defendants were negligent in failing to ensure that physical examinations of a sensitive nature performed by male physicians were conducted appropriately, including but not limited to supervised by female staff, with appropriate medical equipment including a gown and gloves, and explained to the patient to promote safety and understanding. Defendants failed to ensure that all such treatment provided was necessary and appropriate.

41. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs sustained serious and severe personal injuries, as well as pain, suffering, and mental and emotional anxiety. Said injuries have caused and will continue to cause Plaintiffs to sustain pain, physical disability, disfigurement, mental and emotional anxiety, and disruption of the nervous system, all to their general damages according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE AGAINST ALL DEFENDANTS

42. For this cause of action, Plaintiffs incorporate all prior paragraphs.

43. Defendants CMC Dixon Family Practice, Dr. ZHU, and DOES 1 through 50, and each of them, were negligent and failed to use reasonable care to prevent harm to others. Defendants and their employees and agents had the responsibility and duty to adequately and properly investigate, hire, train, and supervise its employees and to protect the general public.

///

44. These Defendants failed to exercise reasonable care in breach of their duties to patients and to the public.

45. This negligence allowed Defendant ZHU to take advantage of his authority to take advantage of Plaintiffs. Such negligence was a substantial factor in causing Plaintiffs harm.

## FIFTH CAUSE OF ACTION

## PREMISES LIABILITY AGAINST DEFENDANTS COMMUNITY MEDICAL CENTERS, INC., dba DIXON FAMILY PRACTICE AND DOES 16 through 35

46. For this cause of action, Plaintiffs incorporate all prior paragraphs.

47. Defendants CMC Dixon Family Practice and DOES 16 through 35 were negligent in that they failed to use reasonable care in keeping the shopping center in a reasonably safe condition. They owned, operated, occupied, and/or controlled the subject clinic. CMC had a duty to discover any unsafe conditions and give adequate warning of a condition that could be reasonably expected to harm others.

48. CMC knew, or should have known, that Defendant ZHU had a propensity to molest young women but did not take adequate precautions to protect the public.

## SIXTH CAUSE OF ACTION

## SEXUAL HARASSMENT (CIV. CODE § 51.9) AGAINST ALL DEFENDANTS

49. For this cause of action, Plaintiffs incorporate all prior paragraphs.

50. Civil Code §51.9 states in pertinent part:

"(a) A person is liable in a cause of action for sexual harassment under this section when the plaintiff proves all of the following elements:

(1) There is a business, service, or professional relationship between the plaintiff and defendant. Such a relationship may exist between a plaintiff and a person, including, but not limited to, any of the following persons:

(A) Physician, psychotherapist, or dentist. For purposes of this section, "psychotherapist" has the same meaning as set forth in paragraph (1) of the subdivision (c) of Section 728 of the Business and Professions Code."

. . .

(2) The defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe

(3) The plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result of the conduct described in paragraph (2)."

51. During Plaintiffs' time as a patient of Defendants, Defendant ZHU intentionally, recklessly and wantonly made sexual advances, solicitations, requests, demands for sexual compliance, and engaged in other verbal, visual, and physical conduct of a sexual nature and of a hostile nature based on Plaintiff's gender that were unwelcome, pervasive and severe, all under the supervision of CMC.

52. A corporation is a "person" within meaning of Civil Code §51.9, which subjects persons or liability for sexual harassment within a business, service or professional relationship, and such an entity defendant may be held liable under this statute for the acts of its employees. (*C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094.) Further, principles of ratification apply when the principal ratifies the agent's originally unauthorized harassment, as is alleged to have occurred herein.

53. Even though CMC knew or should have known of these activities by Defendant ZHU, Defendants did nothing to investigate, supervise, or monitor Defendant ZHU to ensure the safety of the patients in their charge. CMC became directly liable because they approved, aided and abetted, adopted, and ratified the sexual harassment.

## SEVENTH CAUSE OF ACTION

## GENDER VIOLENCE (CIV. CODE § 52.4) AGAINST DEFENDANT ZHU

54. For this cause of action, Plaintiffs incorporate all prior paragraphs.

55. Plaintiffs are informed and believe and thereon allege that Defendant ZHU's acts committed against Plaintiffs, as alleged herein, including the sexual abuse, harassment, and molestation of Plaintiffs, constitutes gender violence and a form of sex discrimination in that one or more of Defendant ZHU's acts would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

56. Plaintiffs are informed and believe and thereon allege that Defendant ZHU's acts committed against Plaintiffs, as alleged herein, including the sexual abuse, harassment, molestation, and discrimination of Plaintiffs, constitutes gender violence in that Dr. Castillo's conduct caused a physical intrusion or physical

invasion of a sexual nature upon Plaintiffs under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

57. Defendant ZHU acted intentionally and with malice and oppression.

## PRAYER

Plaintiffs seeks the following judgment against each Defendant as follows:

1. General damages according to proof at the time of trial;
2. Medical and other special damages, past, present, and future, according to proof at the time of trial;
3. Attorney fees pursuant to Code of Civil Procedure section 1021.5, the Sixth Cause of Action pursuant to Civil Code sections 51.9(b) and 52(a), and the Seventh Cause of Action pursuant to Civil Code sections 52.4(a);
4. Costs of suit incurred herein; and
5. For such other and further relief as the court may deem just and proper.

Dated: June 25, 2025

IKUTA HEMESATH LLP

By: _____
VANESSA N. RAVEN
BENJAMIN T. IKUTA
Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this matter on all issues so triable.

Dated: June 25, 2025

IKUTA HEMESATH LLP

By: _____
VANESSA N. RAVEN
BENJAMIN T. IKUTA
Attorneys for Plaintiffs